UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**DAWN T. o/b/o A.L.C..,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant**.

Case No. 1:22-cv-00746-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on July 28, 2022, denied Plaintiff's application for supplemental security income for her minor child.  Plaintiff has now moved for judgment on the pleadings (Doc. 14), and the Commissioner has filed a similar motion (Doc. 16).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

    Plaintiff protectively filed her application for benefits on January 28, 2020, alleging that her child became disabled on September 22, 2019.  After initial administrative denials of her claim, Plaintiff appeared before an Administrative Law Judge for a hearing on September 15, 2021.  She was the only witness who testified at the hearing.

    The ALJ issued an unfavorable decision on September 24, 2021.  The ALJ found, first, that the claimant was a school-age child on the date her application was filed and as of the date of the decision.  Next, he found that she had not engaged in substantial gainful activity since the application date.  He then determined that she had severe impairments including attention deficit/hyperactivity disorder and anxiety disorder.  He also concluded, however, that her impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.  Because that is the standard for determining if a child is entitled to benefits, the ALJ found that she was not disabled within the meaning of the Social Security Act.

    In her motion for judgment on the pleadings, Plaintiff raises this two-part issue:

Should the decision of defendant Commissioner of Social Security ("the Commissioner") denying disability benefits be reversed because the

      Administrative Law Judge ("ALJ") committed legal error? Should it be reversed because the ALJ's decision was not supported by substantial evidence?

Plaintiff's memorandum, Doc. 14-1, at 2.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

      Plaintiff's mother first testified that her child, who was nine years old at the time of the hearing, was not doing well at school. Her anxiety was affecting her attendance and she had missed three days already even though school had started only a week ago. The same problems affected her attendance the prior two years. The mother had gotten school staff involved to try to assist with the issue, but the child missed 56 days of school in fourth grade, primarily due to anxiety, panic attacks, and asthma.

      The mother next testified that the child had attention issues at school and needed frequent redirection. She was in a special education class but did not do well. At home, the child struggled to complete homework assignments. She was taking medication for ADHD and was scheduled to begin anxiety medication. Due to COVID, she did not socialize with friends but she still saw a counselor. The child also was allergic to almost everything outdoors and was not able to go outside in cold weather. She took steroids for her asthma but they caused weight gain. The child was also on sleeping medication.

      When asked about the child's behavior, the mother testified that she had mood swings and that she talked back on occasion. She also told her mother she had visual and auditory hallucinations. There were also behavioral issues at school and the mother got frequent calls from the teacher about those issues.

### B.  Medical and Other Evidence

      The records which Plaintiff contends are most pertinent can be summarized as follows. When the child was in the third grade, she was evaluated by psychologist Dr. Bowman due to concerns about her math performance. At the time, she was receiving small group instruction in both reading and math but was making little progress. Her classroom teacher said that the child struggled with maintaining attention. Various tests were administered, and the conclusions included a low average IQ score, below average reading comprehension and math concepts and applications, and clinically significant inattention, defiance/aggression, and peer relations. Her cognitive testing was in the average range, however, but she suffered from attention and concentration deficits, and it was believed she would benefit from small-group counseling and continued supplementary reading instruction. She received a Section 504 accommodation plan for the 2019-20 school year that noted her struggles in the areas of attention and concentration, executive functioning, self-control, social skills, maintaining positive relations with others, respect, and academic self-confidence. (Tr. 577-95). Another Section 504 Plan was prepared for

the following school year. That plan was similar and noted that the child would benefit from frequent redirection and refocusing in the classroom. (Tr. 570). The 2021-22 plan said the same. (Tr. 513).

### C. Opinion Evidence

The child was seen by Dr. Santarpia, a psychologist, for a clinical psychiatric examination on August 3, 2020. Her mother reported that she was in regular education classes but got extra help with reading and math. No maladaptive behavior was reported. The child was taking Adderall to control her ADHD symptoms and appeared to be anxious concerning her mother's health. The child's thought processes were coherent and goal-oriented and her affect was full. Her attention and memory skills were intact and her cognitive functioning was in the average range. Dr. Santarpia did not think the child had any problems that were significant enough to interfere with her ability to function on a daily basis. (Tr. 450-54).

Two state agency reviewers also expressed opinions about the child's psychological functional abilities. Dr. Wang concluded on August 24, 2020, that the child had no limitations in five of the six domains of functioning, with the only restriction being a less than marked impairment in the area of attending and completing tasks. (Tr. 101-02). On reconsideration, Dr. Stouter found three less than marked areas of impairment; the one identified by Dr. Wang and the additional areas of acquiring and using information and heath and physical well-being, due to persistent asthma and allergies. (Tr. 115-17).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence

> standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A. Standard for Child's Disability

This Court has explained, in past decisions, the regulatory framework under which a child's disability claim is judged. As stated in *Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 422–23 (W.D.N.Y. 2019),

> To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id*. (quoting 20 C.F.R. § 416.924).
>
> The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.' " *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations and citations omitted).

### B. The ALJ's Decision

The ALJ found that the child had less than marked limitations in the domains of acquiring and using information, in attending and completing tasks, in interacting with others, and in health and physical well-being. He further found that she had no limitations in the domains of moving about and manipulating objects and caring for herself. In reaching these conclusions, the ALJ determined that the state agency opinions were partially persuasive, noting that there were some inconsistencies among their findings and also with the ALJ's ultimate determination, but he also believed them to be generally consistent with the evidence. He did not give any weight, however, to Dr. Santarpia's opinion, due to the fact that the evidence and other opinions all supported a finding that the child had some limitations in functioning. The ALJ also commented on the other evidence of record, noting that the child had a low average IQ and her performance fell, for the most part, in the average range; that there was some conflict in the records about how well the child was attending to tasks and completing her schoolwork; that the evidence also showed she did not have boundary awareness and exhibited defiance and some self-directed behavior; and that the medical records demonstrated persistent asthma and allergies. Because, as noted above, it is necessary for a child to show the existence of one extreme or two marked impairments in the six pertinent domains, the ALJ's conclusions led to a determination that the child did not qualify for benefits.

### C. Plaintiff's Arguments and the Commissioner's Response

Plaintiff begins her argument by citing to SSR 09-2p and SSR 09-4p, which address how an ALJ must consider the evidence in a child's disability case and set out examples of what it means to be impaired in the domain of attending and completing tasks. The latter ruling gives examples of evidence supporting such impairments, including being repeatedly sidetracked, needing supervision to stay on task, and paying attention only when frequently prompted to do so. She next asserts that the opinions of the state agency reviewers, both of whom concluded that the child's impairment in this area was less than marked, were working with an incomplete record which did not include the last two Section 504 accommodation plans. Plaintiff notes that both reviewers relied on Dr. Santarpia's opinion, an opinion which the ALJ found not to be persuasive. She also contends that the ALJ "cherry-picked" information from the record when he noted that the child had shown some improvement in functioning, especially during the COVID year when she was taught remotely. Finally, she faults the ALJ for failing to mention the findings made by school psychologist Dr. Bowman and teacher Ms. Gennaro, both of which, according to Plaintiff, show either a marked or extreme limitation in this area, including excessive absenteeism which affected the child's ability to complete her assigned tasks. She concludes by stating that "the record as a whole ... paints a picture of at least marked and possibly extreme limitations in this domain" and reasons that "the evidence not considered by the ALJ might also warrant further limitations in the other domains." Plaintiff's Memorandum, Doc. 14-1, at 16. For all of these reasons, Plaintiff asks the Court to direct a remand.

In the responsive memorandum, the Commissioner argues, first, that although the child did incur a number of absences (and it is unclear how many there were), it is not necessarily true

that they were all caused by her impairments, and the record shows she was kept home at times when there was no medically necessary reason for her to do so. The Commissioner also points out that despite her issues, the child was both promoted from one grade to the next and kept in regular classes albeit with some additional attention and instruction. The Commissioner disputes Plaintiff's assertion that the ALJ did not consider either Dr. Bowman's or Ms. Gennaro's reports, noting that findings from the former report were cited by the ALJ, and that, in any event, Dr. Bowman's findings are consistent with a less than marked impairment in the area of attending and completing tasks. Lastly, the ALJ argues that Plaintiff's vague reference to the possibility of more severe impairments in other domains of functioning is essentially a waiver of any argument that the ALJ erred in his assessment of the severity of those impairments.

### D. Analysis

Turning first to the Commissioner's last argument, the Court agrees that the brief reference in Plaintiff's memorandum to the possibility of error with respect to other domains of functioning is not specific enough to raise any issues for the Court to review. That leaves only the contention that the ALJ erred in evaluating the domain of functioning associated with attending and completing tasks, and also narrows the issue to this: did the ALJ make an error that could have prevented a finding that the impairment in this area was extreme, since even if the ALJ found a marked impairment in this one area of functioning, that would still not result in an award of benefits?

There is certainly an argument to be made that, on balance, the record supports a finding that the child has a marked impairment in the domain of attending and completing tasks. Most of the educational records contain statements to the effect that the child needs extra support in both math and reading and requires frequent redirection and refocusing. Still, as the ALJ correctly noted, the child was not placed in a separate learning environment and there were indications that her performance improved over time. While the former evidence might be indicative of a serious problem, and therefore a marked limitation, *see, e.g., Perkins ex rel. J.P. v. Astrue*, 32 F.Supp.3d 334 (N.D.N.Y. 2012), it does not mean that the limitation is so serious as to constitute an extreme impairment - or, at least, a reasonable person construing the evidence here would not have to reach that conclusion. To have an extreme limitation, the child would have to be performing at a truly deficient level. One court has equated this to being one out of a thousand, or scoring three standard deviations below the norm. *See Johnson v. Astrue,* 563 F.Supp.2d 444 (S.D.N.Y. 2008). Neither of the state agency reviewers, who had access to at least some of the records in this case, thought that the limitation here rose even to the marked level, let alone the extreme level. Under these particular circumstances, even if the ALJ erred in making a finding unsupported by substantial evidence - and the Court need not answer that question - any error was, in the overall context of a claim of disability, harmless. Consequently, the Court will direct the entry of judgment in favor of the Commissioner.

### V. CONCLUSION AND ORDER

      For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 14), **GRANTS** the Commissioner's motion (Doc. 16), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

                                        **/s/ Terence P. Kemp**
                                        **United States Magistrate Judge**